## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEANIE C. PACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06-CV-267-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits. Plaintiff asserts that the Commissioner erred because the ALJ failed to perform (1) a proper determination at steps two and three of the sequential evaluation process; (2) a proper credibility determination; and (3) a proper determination at step five of the sequential evaluation process. For the reasons discussed below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Jeanie C. Pace, was born May 28, 1955. [R. at 371]. She was 50 years old at the time of the hearing. She has a high school education and has worked as a cook's helper, a massage therapist, a legal secretary, and a customer service representative. [R. 58, 342, 375-76]. She originally claimed disability based on depression

---

[1] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

and an injury to her right ankle. [*E.g.* R. 42]. She later added diabetes, mitral valve prolapse, and carpal tunnel syndrome to her list of disabilities. [R. 85, 92, 63-64, 70, 145, 359].

The injury to Plaintiff's ankle occurred as a result of a motor vehicle accident in November 2002. Her ankle was broken and her great toe dislocated. [*See* R. 112-30, 377]. She also claims to suffer from pain associated with degenerative arthritic changes in her neck and low back. [*E.g.*, R. 105, 110, 121, 124, 381]. She alleges that her work as a legal secretary led to carpal tunnel syndrome, and that, although she planned to have surgery for it, she opted not to have surgery when the pain diminished. [*See* R. 145, 383].

Plaintiff claims that her depression stems from the death of her newborn baby some 20 years ago and aggravated by the sudden death of her brother in September 2003. [*See* R. 146]. In October 2003, she sought medical attention and was hospitalized for suicidal ideation with a plan and homicidal ideation toward her daughter's boyfriend. [R. 131-44]. She was hospitalized again in May 2005 for suicidal thoughts and participated in post-hospitalization therapy. [R. 276-320].

Plaintiff filed for social security disability insurance and supplemental security income benefits by application dated February 12, 2004. [R. at 42-45, 350-53]. Plaintiff alleged that she became disabled on November 4, 2002. [R. 42, 350]. Plaintiff's applications were denied initially and on reconsideration. [R. 23-24, 354-60], and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [R. 33]. ALJ Stephen C. Calvarese held a hearing on October 18, 2005, and rendered a decision on December 20, 2005, concluding that Plaintiff was not disabled within the meaning of the Social Security Act. [R. 13-20]. Plaintiff filed a Request for Review of Hearing Decision on December 27, 2005. [R.

362], and the Appeals Court denied her request on March 23, 2006. [R. 6-8]. Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The

---

[4/]   Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ determined at step two of the sequential evaluation process that Plaintiff's depression and degenerative joint disease were "severe" impairments under the requirements of 20 C.F.R. §§ 404.1520(c) and 416.920(c). [R. 19].  At step three, he found that these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  He also determined that Plaintiff's allegations regarding her limitation were not totally credible. *[Id.]*

In his step four analysis, the ALJ found that Plaintiff was unable to perform any of her past relevant work but Plaintiff retained the residual functional capacity ("RFC") to perform light work activity.  Specifically, he found that she could lift 20 pounds occasionally and 10 pounds frequently; that she could sit, stand and walk about six hours each in an eight-hour day; and that she was restricted by a marked limitation in the ability to understand, remember and carry out detailed instructions and a moderate limitation in the ability to interact appropriately with the general public. *[Id.]* The ALJ determined at step five, that, although Plaintiff's exertional limitations precluded her from performing the full range of light work, there are a significant number of jobs in the national economy that she could perform.  Consequently, the ALJ concluded that claimant was not under a disability as defined in the Social Security Act at any time through the date of his decision. *[Id.]*

## 4. REVIEW

### A. Steps Two and Three

#### 1. Plaintiff's Alleged Carpal Tunnel Syndrome

Plaintiff argues that the ALJ failed to perform a proper determination at step two of the sequential evaluation process because he did not discuss whether claimant's alleged carpal tunnel syndrome ("CTS") could be considered a severe impairment. Specifically, plaintiff points out that the ALJ acknowledged that she complained of CTS and testified about it, but he found that there was no record of treatment for it. [See R. 16.] Plaintiff argues that, because she testified that she received evaluation and treatment for her CTS in Arizona, the ALJ should have requested that Plaintiff's counsel supply medical records supporting her testimony, and the ALJ's failure to do so constitutes reversible error. [Pl. Opening Br., Dkt. # 15, at 3].

Plaintiff's argument is flawed in two respects. First, aside from the fact that she did not claim her CTS as a disabling condition on her application, she did not testify at the hearing that "evidence of evaluation and treatment . . . was accumulated [sic] in Arizona." [*Id.*] Second, and more important, the ALJ did not end his evaluation at step two by any finding that Plaintiff's CTS lacked the severity to proceed to step three of the analysis, and Plaintiff does not argue that her CTS meets a listing at step three. Further, the ALJ considered Plaintiff's CTS later in his decision at step four.

At Step Two, the claimant must establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. In determining whether a claimant's impairments are

sufficiently severe, the Commissioner must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment considered separately would qualify as severe. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523. Plaintiff established that she had a medically severe combination of impairments that significantly limited her ability to do basic work activities. The ALJ considered the combined effect of her impairments and continued with the sequential evaluation process. Plaintiff's argument that the ALJ failed to properly evaluate her CTS is not well-grounded.

### 2. Plaintiff's Alleged Depression

At Step Three of the sequential evaluation process, a claimant's impairment is compared to the Listings found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled. A plaintiff has the burden of proving that a Listing has been equaled or met. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams*, 844 F.2d at 750-51. In his decision, the ALJ is "required to discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citations omitted).

In this case, the ALJ found that neither Plaintiff's depression nor her degenerative joint disease were equal or medically equivalent to an impairment in the Listings. Plaintiff faults the ALJ for not stating specifically that Plaintiff's ankle pain did not meet or equal Listing 1.02, but Plaintiff does not argue that her ankle pain meets or equals the listing. Plaintiff does argue that her depression meets or equals Listing 12.04; hence, her primary complaint is that the ALJ failed to make that finding.

The procedure or "technique" for evaluating a mental impairment is outlined at 20 C.F.R. §§ 404.1520a, 416.920a and the Listing of Impairments. The procedure first requires the Commissioner to evaluate a claimant's "symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1); 416.920a(b)(1). Listings generally include a set of medical findings referred to as "paragraph A criteria" or "Part A" criteria. The Commissioner "must then rate the degree of functional limitation resulting from the impairment(s)," using what is generally referenced as the "paragraph B" or "Part B'" criteria of the Listings. *Id.* at §§ 404.1520a(b)(2); 416.920a(b)(2). Finally, the Commissioner must document application of the technique. *Id.* The following four functional areas are considered under Part "B" of the Listing at 12.04: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. *Id.* at 404.1520a(c)(3); 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). If the Commissioner rates the degree of a claimant's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, the Commissioner generally concludes that the alleged impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1); 4164.920a(d)(1).

In this case, the Commissioner does not dispute that Plaintiff met the Part A criteria; the dispute is whether she met Part B criteria. Apparently relying in part on the Psychiatric Review Technique ("PRT") findings of two consultative examiners [*see* R. 154-57, 265-72], the ALJ found: "Claimant's depression results in a mild to moderate restriction of activities of daily living; mild to moderate difficulties in maintaining social functioning; moderate

difficulties in maintaining concentration, persistence, or pace; and 2 episodes of decompensation of extended duration." [R 14.] The ALJ does not mention Listing 12.04, discuss the evidence upon which the PRT findings were based, or further explain the basis for the findings. He simply found that Plaintiff did not meet or equal a Listing and proceeded to Step Four of the sequential evaluation process.

At step four, the ALJ recited, in detail, the medical records pertaining to Plaintiff's depression, including her symptoms, hospitalizations, treatment, and medications as well as appearance and demeanor upon examination. [R. 15-16]. In his credibility assessment, he pointed out that she had been able to work despite her depressive symptoms for many years. [R. 16]. Nonetheless, the ALJ acknowledged the she had some difficulty with concentration and memory. [*Id.*] He also found that claimant had a marked limitation in the ability to understand, remember and carry out detailed instructions and a moderate limitation in the ability to interact appropriately with the general public. [R. 16-17].

In some circumstances an ALJ's findings at steps four and five of the evaluation process might excuse an ALJ's failure to adequately discuss the evidence or his reasons for determining that a plaintiff is not disabled at step three, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005); however, the ALJ's discussion as to Plaintiff's depression at latter steps in this case is significantly lacking. As Plaintiff points out, the ALJ does not mention any activity of daily living that Plaintiff can perform other than oblique references to her attempts at working. [R. 16]. Further, he makes no reference to any evidence to support the finding regarding her ability to maintain social functioning.

Accordingly, the Court finds that the case should be remanded for a proper Step Three determination, and the Court need not reach Plaintiff's other allegations of error. The

Commissioner's decision is hereby **reversed and remanded** for further proceedings consistent with this opinion.

It is so ordered this 20th day of September, 2007.

Sam A. Joyner
United States Magistrate Judge